NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| WINGATE INNS INTERNATIONAL, INC., | : | |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civ. No. 09-6198 (WHW) |
| | : | |
| P.G.S., LLC; and ANTONINO PECORA, | : | |
| | : | |
| Defendants. | : | |

**Walls, Senior District Judge**

Wingate Inns International, Inc. ("Wingate") moves for default judgment against defendants P.G.S., LLC and Antonino Pecora ("Defendants"). Defendants move to have the default that has been entered against them vacated. Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the motions are decided without oral argument. Wingate's motion for default judgement is denied and defendant's motion to vacate is granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

Wingate is a hotel company and has the exclusive right to sublicense the use of its trademarks and service marks ("Wingate Marks"). (Ver. Compl. ¶¶ 9-10.) Wingate and P.G.S., LLC ("PGS") entered into a franchise agreement, dated December 24, 2003, that allowed PGS to operate Wingate lodging facility. (Ver. Compl. ¶ 17; Ex. A to Ver. Compl.) The franchise

1

**NOT FOR PUBLICATION**

agreement was to last ten years. (Ver. Compl. ¶ 18.) Under the terms of the agreement, PGS was allowed to use the Wingate Marks to promote Wingate's brand name and was to make periodic payments to Wingate for royalties, service assessments, taxes, interest, reservation system user fees, annual conference fees, and other fees (collectively, the "recurring fees"). (Id. at ¶ 19.) PGS also leased signs for the exterior of their franchise from CIT Group. Defendant Pecora gave Wingate a guaranty of PGS' obligations under this agreement, (Ver. Compl. ¶¶ 28-29; Ex. B to Ver. Compl.), and promised that he would "immediately make each payment and perform or cause to be performed each obligation under the agreement." (Ex. A to Ver. Compl.) The defendants also made a note in favor of Wingate in the amount of $250,000. (Id. ¶ 31.)

On April 21, 2009, PGS advised Wingate by letter that it was terminating the franchise agreement effective June 1, 2009. After this date, PGS pledged to no longer operate its facility as a Wingate lodging facility. (Ver. Compl. ¶ 36; Ex. E to Ver. Compl.) Wingate wrote to defendants and acknowledged their request to terminate the lease and explained the debts owed to Wingate under the terms of the franchise agreement after termination. (Ver. Compl. ¶ 37; Ex. F to Ver. Compl.)

Wingate paid the remaining balance under the lease of $43,424.28 to CIT Group and invoiced PGS for this amount in September 2009. (July 22, 2010 Suzanne Fenimore Aff. ¶ 27.) Wingate claims to be owed agreed upon liquidated damages for breach of contract, all outstanding recurring fees, the balance of the note and the amount Wingate paid to CIT Group. (Id. at ¶ 23.)

Wingate alleges that despite PGS' termination of the agreement and its requests that PGS cease use of the Wingate Marks, PGS has "used the Wingate Marks without authorization to rent rooms by, among other things, failure to remove Wingate Marks from guest room doors,

**NOT FOR PUBLICATION**

telephone plates, telephone dialing instructions, ice buckets and trays, and plaques throughout the facility." (Ver. Compl. ¶ 42.)

On December 8, 2009, Wingate filed a complaint against the defendants alleging that the defendants had not fulfilled their duties and obligations under the franchise agreement. PGS and Pecora were served with process on January 17, 2010. Although defendants requested an extension of time within which to answer through Wingate's counsel, and discussed a potential settlement, (July 12, 2010, Paul R. Marino Aff. ¶¶ 4-5), they have not answered the complaint or filed opposition to Wingate's motion.

Wingate requested entry of default against defendants, which the Clerk of Court entered. Wingate then moved for the entry of a default judgment in the amount of $786,158.51. This amount is comprised of (1) $222,940.21 for recurring fees under the agreement, (2) $43,424.81 for defendant's unjust enrichment pursuant to the CIT Group payment, (3) $300,421.52 for liquidated damages, (4) $210,940.13 for the amount outstanding on the note, and (5) $8,441.84 for attorneys' fees and costs.[1] Before this motion was decided, the defendants brought a motion requesting that the default be vacated. Pecora contends that Wingate represented to him that a settlement would be reached and that as long as settlement negotiations were ongoing, no further legal action was required on his part. (November 18, 2010, Antonino Pecora Aff. ¶¶ 27-28),

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment. The power to grant default judgment "has generally been considered an 'inherent power,'

---

[1] The amounts requested for the recurring fees, liquidated damages and the amount outstanding on the note include the original amount as well prejudgment interest through August 16, 2010, the return date of the motion.

**NOT FOR PUBLICATION**

governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984) (citations omitted). Because a default judgment prevents a plaintiff's claims from being decided on the merits, "this court does not favor entry of defaults or default judgments." United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194 (3d Cir. 1984). Accordingly, the Third Circuit has clarified that, while "the entry of a default judgment is left primarily to the discretion of the district court," this "discretion is not without limits," and cases should be "disposed of on the merits whenever practicable." Hritz, at 1181 (citations omitted); see also $55,518.05 in U.S. Currency, 728 F.2d at 194-95.

Rule 55(c) allows a district court to set aside an entry of default "for good cause." Fed. R. Civ. P. 55(c). A district courts is required to "consider the following factors in exercising its discretion in granting or denying a motion to set aside a default under Rule 55(c) or a default judgment under Rule 60(b)(1): (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; (3) whether the default was the result of the defendant's culpable conduct." Budget Blinds, Inc. v. White, 536 F.3d 244, 255 (3d Cir. 2008) (citing $55,518.05 in U.S. Currency, 728 F.2d at 195). These are the same three factors the Third Circuit considers in determining whether a default judgment should be granted. Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000). Any doubts in this inquiry are "to be resolved in favor of the party moving to set aside the default judgment so that cases may be decided on their merits." Ford v. Consigned Debts & Collections, Inc., No. 09-3102, 2010 WL 2758182, at *2 (D.N.J. July 12, 2010) (citing $55,518.05 in U.S. Currency, 728 F.2d at 194-95).

**NOT FOR PUBLICATION**

## DISCUSSION

*Meritorious Defense*

When considering a motion to vacate an entry of default, the Court must first consider "whether the defendant has alleged facts which, if established at trial, would constitute a meritorious defense to the cause of action." Riccelli Premium Produce, 2010 WL 4810618, at *2. This does not require the defaulting party to prove that it will prevail at trial, but it must establish that it has a defense which, on its face, is meritorious. Id.  If the defaulting party cannot establish a litigable defense, the other factors need not be considered. $55,518.05 in U.S. Currency, 728 F.2d at 195.

Wingate alleges that defendants have failed to pay certain fees and continued to use the Wingate Marks after terminating the agreement.  Defendants deny any breach of the agreement and contend they terminated the agreement because Wingate had breached the agreement. Defendants claim that Wingate failed to provide agreed upon general manager training, owner operation orientation training, onsite opening training, remedial training, supplemental training, an adequate reservation system and sufficient marketing.  Defendants also assert that they "took immediate steps to 'deflag' the facility and took all steps necessary in an expedited manner." (Df. Br. at 5.)  Defendants further claim that although they attempted to resolve the current dispute through mediation, as permitted in the agreement, Wingate refused to participate.

In essence, defendants claim that they are not required to pay Wingate the requested monies because Wingate breached the contract before its termination.  Defendants contend that these breaches affected the financial feasibility of the hotel.  Aside from allowing defendants to operate under the Wingate name, the support that defendants allege was never provided is the bulk of Wingate's obligations under the contract.  The alleged breaches are material.  The facts

**NOT FOR PUBLICATION**

put forth, if established at trial would constitute a defense because "when there is a breach of a material term of an agreement, the non-breaching party is relieved of its obligations under the agreement." Nolan ex rel. Nolan v. Lee Ho, 577 A.2d 143, 146 (N.J. 1990).

*Prejudice to the Plaintiff*

Wingate claims that if a default judgment is not entered, it will continue to be harmed. The amount owed on the recurring fees, the amount owed under the note and the liquidated damages are all subject to interest. The defendants will owe Wingate more money the longer it does not receive payment, causing additional harm. See Cathay Bank v. Green Natural Food Inc., No. 09-5200, 2010 WL 1541509, at *2 (D.N.J. Apr. 10, 2010).

While the court in Cathay Bank found prejudice from non-payment and the accrual of interest, prejudice is traditionally established when "the non-defaulting party's ability to pursue the claim has been hindered since the entry of the default judgment." Teamsters Health & Welfare Fund of Philadelphia and Vicinity v. Riccelli Premium Produce, No. 09-6455, 2010 WL 4810618, at *1 (D.N.J. Nov. 19, 2010) (citing Feliciano v. Reliant Tooling Co., 691 F.2d 653, 657 (3d Cir. 1982). The "loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the [default] judgment" support a showing of prejudice. Id. While the amount Wingate alleges it is owed will increase if default is vacated, this amount will be recoverable if Wingate successfully litigates its claim. There is no indication that any evidence will be lost, that any fraud or collusion will occur, or that Wingate's ability to litigate the matter will be affected if the default is vacated. "Delay in realizing satisfaction on a claim rarely serves to establish [a sufficient] degree of prejudice." Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc., 175 F. App'x 519, 523-34 (3d Cir. 2006) (citing Feliciano, 691 F.2dd at 656-

**NOT FOR PUBLICATION**

57).  Wingate will not be prejudiced if the default is vacated because its ability to pursue its claim has not been hindered.  Feliciano, 691 F.2d at 657.

*Culpable Conduct*

As to the third factor, culpable conduct "is conduct that is taken wilfully or in bad faith." Hill v. Williamsport Police Dept., 69 F. App'x 49, 52 (3d Cir. 2003) (quotations omitted).  Here, "other than failing to answer plaintiff's complaint after it had been properly served, there is no indication that defendant's conduct constitutes the requisite wilfulness or bad faith which is necessary to finding a defendant culpable in the context of failing to timely answer." Ford, 2010 WL 2758182, *2) (quoting Gross v. Stereo Component Systems, Inc., 700 F.2d 120, 124 (3d Cir.1983)); see also Blue Ribbon Commodity Traders, Inc. v. Quality Foods Distrib., No. 07-4037, 2007 WL 4323001, at *3 (E.D. Pa. Dec. 11, 2007) (explaining that "[e]ven where neglect is inexcusable, and where the Court cannot condone a defendant's failure to respond to a lawsuit for an extended period of time, culpable conduct warranting the refusal to set aside default must rise to the level of 'flagrant bad faith,' and 'callous disregard of responsibility'" (citation omitted)).  Here, the defendants obtained out of state counsel who communicated with Wingate on several occasions before default was entered and engaged in settlement negotiations. Defendants claim that they were led to believe by Wingate that no formal actions were required on their behalf while settlement negotiations were ongoing.  When defendants obtained a New Jersey lawyer, they promptly filed the motion now before the Court.  Nothing in this history establishes the kind of wanton disregard for the proceedings required to show culpable conduct. Defendants' failure to respond to Wingate's filings was the result of miscommunication and ignorance, not bad faith or strategy.  This is not culpable conduct.  Zawadski de Bueno v. Bueno Castro, 822 F.2d 416, 421 (3d Cir. 1987) (finding that a "breakdown in communication" between

**NOT FOR PUBLICATION**

counsel did not rise to the level of culpable conduct).

## CONCLUSION

Because defendants have a prima facie defense, Wingate will not be prejudiced if the default is vacated or if default judgment is not entered, and defendants' failure to appear was not the result of culpable conduct, defendants' motion to vacate the default is GRANTED and Wingate's motion for default judgment is DENIED.

**s/ William H. Walls**
United States Senior District Judge
