**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| WINGATE INNS INTERNATIONAL, INC., | : : : | |
| Plaintiff, | : : | **OPINION** |
| v. | : : : | Civ. No. 09-cv-6198 (WHW) |
| P.G.S., LLC, and ANTONINO PECORA, | : : | |
| Defendants. | : : : : | |

**Walls, Senior District Judge**

This matter is before the Court on Plaintiff's motion for partial summary judgment and Defendants' motion for summary judgment. The motions have been decided upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78. Plaintiff's motion for summary judgment is granted, and Defendants' motion is denied.

### FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of an unsuccessful attempt by franchisee Defendants to operate a franchise hotel in New York. Plaintiff Wingate is a Delaware corporation with its principal place of business in Parsippany, New Jersey. Compl. ¶ 1. Defendant PGS is a New York limited liability company with its principal place of business in New York, New York. Id. at ¶ 2. Defendant Pecora is the sole member of PGS and is a citizen of New York. Id. at ¶ 3. On December 24, 2003, PGS and Wingate entered a ten-year Franchise Agreement, Id. at Ex. A; Workman Decl. Ex. C (hereinafter "Franchise Agreement"), for the operation of a 120-room

1

**NOT FOR PUBLICATION**

guest lodging facility in New York. Compl. Id. ¶ 17. On August 22, 2005, an amendment was signed expanding the number of approved guest rooms to 136. Workman Decl., Ex. F.

The parties dispute whether Pecora has a limited ability to read English and whether he had an attorney to review the Franchise Agreement when he initially entered into it. Def. Statement of Facts in Opp'n to Pl. Mot. for Summ. J. ¶¶ 5, 7; Pl. Resp. to Def.'s Statement of Facts ¶¶ 5, 7. Pecora also provided Wingate with a personal guaranty ("Guaranty") of PGS' obligations under the Franchise Agreement. Guaranty, Workman Decl., Ex. D. Under the Guaranty, if PGS defaulted, Pecora would "immediately make each payment and perform or cause Franchisee to perform, each unpaid or unperformed obligation of Franchisee under the Agreement." Id.

Under the terms of the agreement, Defendant PGS was allowed to use the Wingate Marks and was to make periodic payments to Plaintiff for certain recurring fees. Franchise Agreement § 12. On December 22, 2003, prior to the agreement being signed, Plaintiff's representative sent an internal email stating "Please cap damages at $250k."  Section 18.5 of the Franchise Agreement reads, "Notwithstanding section 12.1 of the Agreement, Liquidated Damages will be $250,000.00 for any post opening termination." Franchise Agreement § 18.5. Section 12.1 states:

> If we [Plaintiff] terminate the license under section 11.2, or you [Defendant PGS] terminate this Agreement … , you will pay us within 30 days following the date of termination, as Liquidated Damages, an amount equal to the sum of accrued Recurring Fees during the immediately preceding 24 full calendar months …. Liquidated damages are paid in place of our claims for lost future Recurring Fees under this Agreement. Our right to receive other amounts due under this Agreement is not affected.

 Franchise Agreement § 12.1.

Pecora also signed a receipt of the FTC's Uniform Franchise Offering Circular ("UFOC") agreement. Workman Decl. at ¶¶ 2 – 3, Ex. A, Ex. B. The UFOC agreement states, "…we do not

2

**NOT FOR PUBLICATION**

furnish or authorize our salespersons to furnish any oral or written information concerning actual, projected or potential sales, costs, expenses, income or profits of a proposed facility. Actual results vary." Id. at Ex. A ¶¶ 47-48.

The Defendants also made a Development Incentive Note in favor of Plaintiff in the amount of $250,000. Pl. Statement of Undisputed Material Facts ¶ 14. The August 2005 Amendment to the Franchise Agreement specified that $200,000 from the Development Incentive Note would be distributed upon the opening of the initial 81 rooms, which were to be opened by December 31, 2005. Workman Decl., Ex. F. The remaining $50,000 of the Development Incentive Note was to be distributed upon the opening of the remaining 55 rooms, which was to take place by July 31, 2006. Id.

Defendant PGS advised Plaintiff by letter on April 21, 2009 that it was terminating the franchise agreement effective June 1, 2009. Workman Decl., Ex. G. Wingate acknowledged the Defendants termination of the franchise agreement and requested the amounts due according to the agreement in a letter dated May 7, 2009. Id. at Ex. H. Wingate specifically requested the agreed upon liquidated damages in the amount of $250,000 for the breach of contract, all outstanding recurring fees and the outstanding amount due under the Note of $173,333.33. Id. The Defendants disputed these amounts and did not make any payments, claiming that Wingate representatives informed Pecora that $250,000.00 would be the most the Defendants would pay if they chose to terminate the franchise agreement. Def. Statement of Facts in Opp'n to Pl. Motion for Summ. J., ¶¶ 13 – 16, 24.

Plaintiff seeks summary judgment for liquidated damages against PGS as a result of termination of the Franchise Agreement (Third Count), recurring fees PGS owes under the Franchise Agreement (Fifth Count), and both liquidated damages and recurring fees against

3

**NOT FOR PUBLICATION**

Pecora based on his Guaranty (Seventh Count). Defendants argue that the Franchise Agreement is unenforceable because Wingate made fraudulent misrepresentations that induced them to sign. Defendants also argue that the Franchise Agreement is unenforceable because Plaintiff breached the agreement. Plaintiff also seeks summary judgment on its unjust enrichment claim against PGS and Pecora for money owing under a Development Incentive Note (Eighth Count). Plaintiff claims $250,000 in liquidated damages, $224,614.89 in unpaid recurring fees, and $173,333.33 owing under the Note, plus interest, attorneys' fees and costs of suit.

Defendants cross-move for summary judgment dismissing Plaintiff's entire complaint, including the claims on which Plaintiff has moved for summary judgment and Plaintiff's additional claims. The claims on which Plaintiff did not seek summary judgment are unauthorized use of Wingate's marks (First Count), an accounting of revenue derived through use of the marks (Second Count), actual damages for premature termination of the Franchise Agreement as an alternative remedy to liquidated damages (Fourth Count), and unjust enrichment derived from misuse of Plaintiff's marks while failing to pay recurring fees (Sixth Count).

Defendants brought a counterclaim alleging general breach of contract (Counterclaim First Count), breach of the Franchise Agreement (Counterclaim Second Count), negligence (Counterclaim Third Count), violation of the New Jersey Consumer Fraud Act (Counterclaim Fourth Count), that Wingate was unjustly enriched (Counterclaim Fifth Count), fraudulent representations (Counterclaim Sixth Count), "willful, fraudulent, unconscionable representations" (Counterclaim Seventh Count), and breach of the Franchise Agreement (Counterclaim Eighth Count). Both Plaintiff and Defendants move for summary judgment on Defendants' counterclaims.

**NOT FOR PUBLICATION**

## STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute between the parties must be both genuine and material to defeat a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). A disputed fact is material where it would affect the outcome of the suit under the relevant substantive law. Scott v. Harris, 550 U.S. 372, 380 (2007). A dispute as to a material fact is genuine where a rational trier of fact could return a verdict for the non-movant. Id. The movant bears the initial burden to demonstrate the absence of a genuine issue of material fact for trial. Beard v. Banks, 548 U.S. 521, 529 (2006). If the movant carries this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." Scott, 550 U.S. at 380 (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986)). At this stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter." Anderson, 477 U.S. at 249. Each party must support its position by "citing to particular parts of materials in the record … or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

## DISCUSSION

### I.  Plaintiff is entitled to summary on its Third, Fifth, Seventh and Eighth Claims.

Plaintiff has met its burden of showing that there is no genuine issue of material fact regarding Defendants' liability under the Franchise Agreement, Guaranty, and Development Incentive Note and that Plaintiff is entitled to judgment as a matter of law. The Third and Fifth Claims are for breach of contract under the Franchise Agreement for Defendants' failure to pay

5

liquidated damages and recurring fees. The Seventh Claim is for breach of contract by Defendant Pecora under the Guaranty. The Eighth Claim is for unjust enrichment on the basis of a contractual obligation Defendants had to pay off the Note. Under New Jersey law, Plaintiff bears the burden of showing: 1) the existence of a valid contract; 2) a breach of the obligations under that contract; and 3) resulting damages. Murphy v. Implicito, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007). Defendants allege the existence of a genuine issue of material fact regarding the existence of a valid contract.

> **a. There is no genuine issue of material fact regarding the validity of the Franchise Agreement, Guaranty and Note contracts.**
>
> > **i. The Franchise Agreement is not voidable for fraud in the inducement.**

Both parties move for summary judgment on the Third and Fifth counts of the Complaint, regarding Defendants' liability for breach of their obligations under the Franchise Agreement. Defendants argue that they are not liable because they were fraudulently induced to enter the contract by Plaintiff's misrepresentation that damages would be capped at $250,000. This alleged misrepresentation does not create a bar to summary judgment in favor of Plaintiff because it concerns an unambiguous written contract term. Defendants cannot have reasonably relied on a misrepresentation that was clearly contradicted by the written contract. Defendants also assert that Plaintiff misrepresented the amount of business it would provide. This prediction about the future cannot defeat Plaintiff's motion for summary judgment.

Defendants claim that the Plaintiff fraudulently misrepresented the meaning of the term that capped damages, particularly whether it capped all damages or only liquidated damages. "[T]he parol evidence rule operates to prohibit the introduction of oral promises to alter or vary an integrated written instrument." Filmlife, Inc. v. MaL "Z" Ena, Inc., 598 A.2d 1234, 1235 (N.J. Super. Ct. App. Div. 1991). Extrinsic evidence to prove fraud in the inducement is an exception

6

**NOT FOR PUBLICATION**

to the parol evidence rule. Id. "There is a distinction between fraud regarding matters expressly addressed in the integrated writing and fraud regarding matters wholly extraneous to the writing." Id. at 1236. The alleged fraudulent misrepresentation here concerned an express provision of the written agreement. The language in the written contract is unambiguous that it only caps liquidated damages. Plaintiff's motion for summary judgment as to the applicability of the contract is granted because the contract "language being interpreted 'is subject to only one reasonable interpretation.'" See Emerson Radio Corp. v. Orion Sales, Inc., 253 F.3d 159, 164 (3d Cir. 2001).

Defendants also assert that Plaintiff fraudulently induced them to sign the Franchise Agreement by representing that 30 percent of the reservations would be provided by Plaintiff and that Defendants' hotel would do as well as the competitor Sheraton. Defs.' Reply to Pl.'s Opp'n to Def.'s Cross-Mot. for Summ. J. 4. Fraud in the inducement requires Defendants to show that Plaintiff's statement misrepresented "a fact as it existed at the time of the misrepresentation or at some time prior to the misrepresentation." Ramada Franchise Sys., Inc. v. Polmere Lodging Corp., Civ. No. 98-2809, at 6 (D.N.J. July 30, 1999). An exception is when "a promise is given and the promisor knows at the time of promising that he has no intention of fulfilling it …." Id. (citing Lo Bosco v. Kure Eng'g Ltd., 891 F. Supp. 1020, 1031 (D.N.J. 1995)). In that case, the "promise will constitute a misstatement of present fact and may support an allegation of fraud." Id. Here, as in Polmere, the promise was related to future revenue streams. "Since this promise was made about the future, [the franchisor] could not have known the statement to be false when made." Id.

This case is distinguishable from Travelodge Hotels, Inc. v. Honeysuckle Enter., Inc., 357 F. Supp. 2d 788 (D.N.J. Feb. 16, 2005), which both parties cite. The Honeysuckle court

7

denied summary judgment, holding that there were "genuine issues of material fact as to [the] fraud in the inducement counterclaim …" Id. at 797. Then the alleged fraudulent misrepresentation was that Travelodge would include the franchisee's property in their reservation system. Id. at 793. That was a future promise for specific performance of actions within Travelodge's complete control. Id. at 796-97. When the party has no intention of fulfilling its promise, the promise can support an allegation of fraud. Id. at 797. Here, by contrast, the alleged promise to provide a certain percentage of business is not within the promisor's control. "The statement [allegedly promising revenue] did not concern matters within [the franchisor's] control, so [franchisor] could not have promised this result while not intending to perform." Polmere, Civ. No. 98-2809, at 7.

### ii. Defendants have not raised a genuine issue of material fact that Plaintiff breached the Franchise Agreement.

"[W]hen there is a breach of a material term of an agreement, the non-breaching party is relieved of its obligations under the agreement." Nolan ex rel. Nolan v. Lee Ho, 577 A.2d 143, 146 (N.J. 1990). Defendants' allege that Plaintiff breached its obligations by not providing Defendants with a $250,000 incentive bonus, by not providing them with "the assistance necessary to run a successful hotel," by failing to help Pecora obtain financing, and by not providing the percentage of reservations they promised. Br. in Opp'n to Pl.'s Mot. for Summ. J. 14; Defs.' Reply to Pl.'s Opp'n to Defs.' Cross-Mot. for Summ. J. 54 7-8.

Defendants have not raised an issue of material fact by alleging that Plaintiff breached its obligations by not providing Defendants with a $250,000 incentive bonus. Whether Plaintiff was obligated to provide Defendants the full amount and whether Plaintiff did in fact furnish the full amount is not material to whether the Defendants owe Plaintiff the amount for which Plaintiff seeks summary judgment because Defendants admit to owing the amount Plaintiff claims under

8

that Note. Pecora testified at his deposition that Plaintiff did not provide him with the $250,000 bonus. Dep. of Antonino Pecora, 150:14-16. Pecora testified that he was given part of the $250,000 reflected in the Note, but not all of it. Id. at 114:10-25 ("I know they gave me some money, but I don't remember it was 200, it was less. But I know they never give me the 250."). But Pecora answered "No" when asked if he had any reason to dispute that he owed Plaintiff $173,000 under the note. Id. at 115:10-18. Any dispute over whether Plaintiff provided Defendants with the entire $250,000 is not material because Pecora admits that he owes Plaintiff the amount it seeks. Even if Plaintiff breached by not providing the final $50,000, Defendants would not be relieved of their obligation to pay the amount they admit they received and now owe.

Nor have Defendants raised issues of material fact with regard to the following alleged breaches: failing to help Pecora obtain financing; not providing a particular percentage of reservations; failure to provide training; and not providing Defendants with "the assistance necessary to run a successful hotel." As to the first two alleged breaches, Defendants have not shown that Plaintiff was contractually obligated to do these things. These alleged breaches cannot then form a basis for a breach of contract defense or counterclaim. As for training, Plaintiff was obligated under the Franchise Agreement to offer general manager and owner orientation training and on-site opening training. Franchise Agreement § 4. But Defendants admit that Plaintiff did provide the training required by the contract, so there is no genuine issue of fact regarding this alleged breach. Dep. of Antonino Pecora, 69:4-70:17. As for the last alleged breach, Plaintiff was obligated to maintain a computerized reservation system and to provide software maintenance to connect to the reservation system. Franchise Agreement § 4.2. Plaintiff was further obligated to market the chain, though Plaintiff did "not promise that the

9

**NOT FOR PUBLICATION**

Facility or [Defendants] will benefit directly or proportionately from marketing activities." Id. § 4.3. Plaintiff also contracted to publish a Chain Directory and include Defendants' facility and to consult with Defendants about standards compliance. Id. §§ 4.3.3, 4.6. But Defendants have not raised any genuine factual allegations that Plaintiff breached any of these provisions. See Scott, 550 U.S. at 380.

        **b. Plaintiff has shown that there is no genuine issue of fact that Defendants breached the contracts by not paying recurring fees, liquidated damages, or amount due on the Development Incentive Note.**

Under the Franchise Agreement and Guaranty, Plaintiff owed recurring fees and liquidated damages. Under the Development Incentive Note Defendants owed payments on the amount loaned for development of additional rooms. There is no genuine issue of fact that Defendants have not paid these recurring fees following Defendants' termination of the Franchise Agreement. Given Plaintiff's evidence that Defendants did not pay the recurring fees or liquidated damages, Pecora's testimony at the deposition that he is at most unsure whether Defendants paid the recurring fees does not raise a genuine issue of fact. Defendants have not claimed that they paid any liquidated damages or any of the amount owed under the Development Incentive Note, so no genuine issue of fact regarding these breaches exists.

        **c. There is no genuine issue of material fact regarding damages to Plaintiff as a result of Defendants' breach.**

Plaintiff has met its burden to demonstrate the absence of material issues of fact regarding the damages it seeks: 1) outstanding liquidated damages in the amount of $250,000; 2) recurring fees in the amount of $224,614.89; 3) $173,333.33 for amount due under the Development Incentive Note; 4) contractual prejudgment interest on all amounts in an amount to be determined; and 5) attorneys' fees and costs of suit in an amount to be determined.

**NOT FOR PUBLICATION**

### i. Recurring Fees

Plaintiff seeks payment of the past due Recurring Fees of $224,614.89 plus interest due to it under the Franchise Agreement. Plaintiff contends that Defendant PGS owed recurring fees under the Franchise Agreement, which Pecora also owes by virtue of the Guaranty. Workman Decl. ¶ 12, Ex. J. Defendant Pecora testified throughout his deposition that he did not know whether recurring fees were paid or not. E.g. Dep. of Antonino Pecora 107:14-16 (Q. "Do you know if P.G.S. paid [January 2009 franchise fees]? A. I'm not sure."). Defendants do not contest that they have not made any payments for recurring fees since termination of the Franchise Agreement. The Franchise Agreement is enforceable and the Defendants have not raised a genuine issue of fact as to the amount due. Summary judgment in favor of Plaintiff on Plaintiff's Fifth Count for recurring fees is granted.

### ii. Liquidated Damages

In addition to the Recurring Fees, Plaintiff seeks liquidated damages in the amount of $250,000.00. Section 18.5 of the Franchise Agreement provides "[n]otwithstanding section 12.1 of the Agreement, Liquidated Damages will be $250,000 for any post opening termination." Franchise Agreement § 18.5. Whether a liquidated damages clause is valid and enforceable is a question of law. Naporano Assoc., L.P. v. B&P Builders, 705 A.2d 1123, 1127 (N.J. Super. Ct. App. Div. 1998). New Jersey law favors contractual provisions that fix specified amounts of damages in the event of a breach of contract. D.H.M. Indus., Inc. v. Central Port Warehouses, Inc., 318 A.2d 20 (N.J. Super. Ct. App. Div. 1973), aff'd, 318 A.2d 19 (N.J. 1974). These provisions will be enforced under New Jersey law if: 1) damage suffered by the non-breaching party would have been difficult to ascertain at the time of contracting; and 2) the amount of liquidated damages "is a reasonable forecast of just compensation for the harm that is caused by the breach." Wasserman's Inc. v. Middletown, 645 A.2d 100, 109 (N.J. 1994). New Jersey law

11

also provides that liquidated damages provisions in a commercial contract between sophisticated parties are presumptively reasonable, and the party challenging the clause bears the burden of proving its unreasonableness. Metlife Capital Fin. Corp. v. Washington Ave. Assoc., 732 A.2d 493, 499 (N.J. 1999).

The liquidated damages provision in this case is reasonable. Both parties were sophisticated commercial partners. The Defendants make the argument that Pecora is an unsophisticated businessman with limited education, English abilities and hotel licensing experience. But in 2003 Pecora held over $10 million in real estate assets despite his limited education. Dep. of Antonino Pecora 35:11-17. The damage suffered by Plaintiff would be difficult to ascertain at the time of contracting. Given the nature of the transient lodging business, gross room revenues can fluctuate from month to month depending upon factors such as the national, regional and local economy, the travel patterns of vacationers, and the effort, skill, and resources of the licensee. Finally, $250,000 is a reasonable forecast of injury in this case. The contract states that the liquidated damages are to cover the future recurring fees that Plaintiff will not collect. The itemized statement of recurring fees indicates that the total of these fees for approximately eight months is about $160,000. Compl. Ex. F. The $250,000 liquidated damages estimate is a reasonable forecast for the loss of those fees in the remaining months of the contract.

### iii. Development Incentive Note

The Development Incentive Note obligated the Defendants to pay Plaintiff the outstanding principal upon the termination of the license granted under the Franchise Agreement. Compl. Ex. C. The Note provides for the acceleration of the repayment obligation where the Franchise Agreement is terminated. Id. The Defendants have failed to pay the outstanding

**NOT FOR PUBLICATION**

principal of $173,333.33 despite their obligation to do so. Workman Decl. ¶ 14. The Defendants are obligated to repay the principal due.

### iv.  Prejudgment Interest

New Jersey law governs the award of prejudgment interest in federal diversity cases brought in this Court. Jarvis v. Johnson, 668 F.2d 740, 746 (3d Cir. 1982).  New Jersey law allows contracting parties to agree to prejudgment interest on late payments. AGS Computer Inc. v. Bear Sterns & Co., Inc., 581 A.2d 508, 509 (N.J. Super. App. Div. 1990). The Franchise Agreement provides for prejudgment interest on all past due payments at the rate of 1.5% per month (18% per annum). Franchise Agreement § 7.3. The Note also provides for the accrual of interest at eighteen (18%) percent per annum on the principal amount when the maker defaults in repayment or the Note is accelerated. Plaintiff is entitled to prejudgment interest on: 1) liquidated damages at the rate of 1.5% per month from July 1, 2009 through the date of this judgment; 2) outstanding recurring fees from June 1, 2009 through the date of this judgment at the rate of 1.5%; and 3) the amount due under the Note at the rate of 1.5% from June 11, 2009 through the date of judgment.

### v.  Attorney's Fees and Costs

Under New Jersey law in a breach of contract action, legal expense can be recovered if the contract between the parties so provides. Papalexiou v. Tower W. Condo., 401 A.2d 280, 287 (N.J. Super. Ch. Div. 1979). New Jersey "does not have a public policy which would prevail over the enforcement of an express contract between private parties." Id. In § 17.4 of the Franchise Agreement, as incorporated by the Guaranty, Defendants agreed to "pay all costs and expenses, including reasonable attorneys' fees, incurred by [Plaintiff] to enforce this Agreement or collect amounts owed under the Agreement." Franchise Agreement § 17.4. Accordingly,

13

NOT FOR PUBLICATION

Plaintiff is entitled to summary judgment for Attorneys' fees and costs incurred in connection with this action.

> II. **Plaintiff is entitled to summary judgment on Defendants' First, Second, Third and Eighth Counterclaims (breach of contract claims).**

Plaintiff has demonstrated that there is no genuine issue of material fact as to Defendants' counterclaims involving breach of contract. Defendants have not raised more than a metaphysical doubt that Plaintiff breached any contractual obligation. The First and Second Counterclaims allege breach of contract for failure to provide services contracted for in the Franchise Agreement. The Eighth Counterclaim specifically alleges that Plaintiff "breached its contract … in failing to provide services, training and support as required by the Franchise Agreement." These Counterclaims are subject to summary judgment because Plaintiff has shown that there is no genuine issue of material fact.

Defendants claim that Plaintiff failed to provide agreed upon general manager training, owner operation orientation training, onsite opening training, remedial training, supplemental training, an adequate reservation system and sufficient marketing. The First Count alleges that Plaintiff "failed to provide any services which they were required to provide." Answer, Countercl. and Third-Party Compl. 12 ¶ 29. The Second Count claims that "Plaintiff … breached its agreement with PGS and Antonio Pecora, the result of which resulted in PGS and Antonino Pecora have been damaged (sic)." Id. at 13 ¶ 2. The Eighth Count alleges that Plaintiff "breached its contract with [Defendants] in failing to provide services, training and support as required by the Franchise Agreement." Id. at 16 ¶ 2.

Plaintiff's motion for summary judgment on the First, Second and Eighth Counterclaims is granted because Plaintiff has shown that there is no genuine issue of material fact for trial. Plaintiff was obligated under the Franchise Agreement § 4.1 to provide various types of training.

14

**NOT FOR PUBLICATION**

Pecora testified at his deposition that Plaintiff made the "mandatory recurrent training for franchisees and managers" available and that his management company's employee attended it. Dep. of Antonino Pecora 69:4-20. He also testified that his staff participated in on-site opening training at the hotel, which was made available by Plaintiff. Id. 70:2-17. He also testified that the front desk team was retrained. Id. 90:9-18. Plaintiff was obligated under § 4.2 to maintain a computerized reservation system and to provide software to connect to the system. Defendants have not made any specific allegation that this obligation was breached.

Plaintiff has also demonstrated that there is no genuine issue of material fact as to Defendants' Counterclaim for negligence and that it should be dismissed as a matter of law. Defendants' negligence counterclaim is that Wingate "was grossly, willfully, recklessly and otherwise negligent in failing to provide the promised services to the defendants …." Ans., Countercl. and Third-Party Compl. 14 ¶ 2. This Counterclaim restates the breach of contract claims, so should be dismissed for the same reasons as the breach of contract claims. See Blanos v. Penn. Mut. Life Ins. Co., No. 09-5174, 2010 WL 143670, at *7 (D.N.J. Jan. 12, 2010).

### III.  Plaintiff is entitled to summary judgment on Defendants' Fourth Counterclaim (New Jersey Consumer Fraud Act).

The Supreme Court of New Jersey has not addressed whether the New Jersey Consumer Fraud Act ("CFA") applies to the sale and acquisition of franchises. The Third Circuit and New Jersey lower courts have disagreed over what the Supreme Court is likely to hold. The Third Circuit holds that the CFA does not apply to franchises. J&R Ice Cream Corp. v. Cal. Smoothie Licensing Corp., 31 F.3d 1259 (3d Cir. 1994). The lower New Jersey courts have held that the CFA can apply to franchises. Kavky v. Herbalife Int'l, 820 A.2d 677, 678-79 (N.J. Super. Ct. App. Div. 2003). This Court follows the Third Circuit's reasoning that the CFA does not apply to sale and acquisition of franchises: a franchise is not "merchandise" under the CFA. J&R Ice

15

**NOT FOR PUBLICATION**

Cream Corp., 31 F.3d at 1271-72. The term "merchandise" is to be interpreted according to the purpose of the CFA, which is to protect consumers in the general marketplace. Defendant franchisee here is not a consumer in the general marketplace, so the CFA does not apply.

Even if the Third Circuit's prediction that the New Jersey Supreme Court will determine that the CFA does not apply to franchises is incorrect, it does not follow that this particular type of franchise would necessarily fall under the CFA. The New Jersey case disagreeing with the Third Circuit's holding that franchises are not covered by the CFA is factually distinguishable from this case. See Kavky, 820 A.2d at 678-79. The franchisor at issue in that case advertised on the internet to "make anyone a distributor in return for $85 and to provide 'Pre-Paid Retail Internet Customers' at $8.50 per customer." Id. at 679. In that case the franchisor was contracting to provide individual customers for a set amount per customer. Buying a customer inventory of that type places the franchisee in a much more similar role to a traditional consumer than purchasing the use of a mark more generally as in this case. Whether or not there is a blanket rule prohibiting the CFA from applying to franchises in general, it does not apply to this particular franchise.

**IV.    Plaintiff is entitled to summary judgment on Defendants' Fifth Counterclaim.**

The Fifth Count, unjust enrichment, is a quasi-contractual claim that cannot be maintained where an express contract governs the same subject matter. Defendants argue in the fifth count of their counterclaim that Plaintiff "was unjustly enriched during the period that the parties maintained the relationship." "Quasi-contractual liability will not be imposed if an express contract exists concerning the identical subject matter." Suburban Transfer Serv., Inc. v. Beech Holdings, Inc., 716 F.2d 220, 226-27 (3d Cir. 1983). The Court has already held that a valid written contract governs the same subject matter, so Plaintiff is entitled to summary judgment on the unjust enrichment count of the counterclaim.

16

**NOT FOR PUBLICATION**

> **V.   Plaintiff is entitled to summary judgment on Defendants' Sixth and Seventh Counterclaims.**

Defendants' Sixth Counterclaim is for fraudulent inducement based on the same "false representations" that Defendants' alleged relieved them of their obligations under the contract. To establish a claim for fraudulent inducement, a party needs to show 1) material misrepresentation of a presently existing or past fact; 2) made with knowledge of its falsity; and 3) with an intention that the other party rely on it; 4) resulting in reliance by that party; 5) to his detriment. Banco Popular N. Am. v. Gandi, 876 A.2d 253, 260 (N.J. 2005). This Counterclaim is barred by the parol evidence rule for the same reasons it is barred as an affirmative defense.

Defendants' Seventh Counterclaim alleges that Defendants "relied upon the willful, fraudulent, unconscionable representations and actions" of Plaintiff. Defendants have not cited any case law or statute under which a claim for "willful, fraudulent, unconscionable representations" will lie. The Court finds that this claim is duplicative of the fraudulent inducement claim and grants summary judgment to Plaintiff for the same reasons.

> **VI.   The Court will not consider breach of the duty of good faith and fair dealing because it was not presented as a counterclaim.**

Defendants argue in their brief in opposition to Plaintiff's motion for summary judgment that "Plaintiff breached its duty of good faith and fair dealing" when negotiating and performing the Franchise Agreement. This claim was not pled in the Defendants' Counterclaims and will not be considered. See Kieffer v. New Century Fin. Servs., Civ. No. 10-3938, 2012 WL 1853895, at *5, n. 4 (D.N.J. May 21, 2012) (attempted amendment of complaint through briefing in opposition to motion for summary judgment is not permitted).

## CONCLUSION

Plaintiff's motion for summary judgment on its Third, Fifth, Seventh and Eighth Claims and all of Defendants' counterclaims is granted; Defendants' motion for summary judgment on

**NOT FOR PUBLICATION**

these claims is denied. The Court will not consider the Defendants' motion for summary judgment on the First, Second, Fourth, and Sixth Count of Plaintiff's complaint because Plaintiff is dismissing those claims.

**/s William H. Walls**
United States Senior District Judge

18